Council, good morning. We're here to hear argument in the Harvard matter. And we'll have an appellant, please. Yes, Massimo Terzini for the appellant, Dwayne Harvard. Just so you know, we are well aware of the facts. Well, before that, we are well aware of the facts. But tell me how much time you'd like to reserve. May I reserve three minutes for rebuttal? Three minutes. Go ahead, sir. Thank you. Thank you. May it please the court. The lower court here began its opinion by stating this case arose from a bizarre incident in which the plaintiff, Dwayne Harvard, drove for 10 miles at highway speed with a man on the hood of his car. With all due respect to the lower court, that is not how this case arose. This case arose when a man violently attacked Mr. Harvard and the passenger in his vehicle and jumped on the hood of his car, made racial slurs, presented weapons, refused to get off the vehicle. Mr. Harvard called 911. So where did the judge come from? I'm going to interrupt you because we are all well aware. So we're going to jump right into it. So as you know, false arrest and false imprisonment claims fail if the arresting officer had probable cause to arrest on any charge. So my question to you is, what's your best argument that Trooper Cisnallis did not have probable cause to arrest Mr. Harvard for driving under the influence? Yes, Your Honor. Trooper Cisnallis, I will agree that he is not required to resolve all credibility conflicts and conflicts in the evidence that he has. However, he is not free to ignore exculpatory evidence. The facts within Trooper Cisnallis' knowledge when he charged Mr. Harvard were that Mr. Harvard called 911. Well, this is a driving under influence specifically. Judge Greenaway asked you, how was there not probable cause to charge him with driving under the influence? Well, this court, I'm sure, is aware that Mr. Harvard was below the legal limit. He did not have any drugs in his system. Although there was the egregious accusation that he was smoking crack cocaine in his vehicle, there was no evidence to support that claim. Well, but the crime itself is an individual may not drive, operate physical control after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating, or being in actual physical control. Now, he observed Mr. Harvard and observed him being very sweaty and agitated and his eyes were darting around. And even though he's below the legal limit, could not the officer be justified in saying, you know what, this guy was not capable of driving safely. He's under the legal limit, but that's not the be all and the end all. So how do you get around the DUI? Yeah, Mr. Harvard was sweaty. He was excited. But if you view those facts in the light most favorable to him, those factors are because he was a victim of a heinous crime. Nobody observed Mr. Harvard driving unsafely, although he did drive with Mr. Sutton on the hood of his car on the highway. At high speed. At highway speed. What was the speed? I thought he was like 20, 25 miles an hour. Is that wrong? Mr. Harvard testified that he was driving the speed limit. I thought it was higher. I thought it was 70 or 80. There was other testimony in the case that he was driving faster than that, yes. You know, isn't your best case here to say that the judge was wrong in saying that no reasonable jury could find the lack of probable cause? I mean, isn't that the standard that we really have here? And whether the court should have made that determination or whether it's up to the jury to do that under the Dempsey case? I agree. As the court points out, Dempsey notes that the determination is necessarily fact intensive and it will usually be appropriate for a jury to determine whether probable cause existed. How about for the reckless endangerment charge? You know, Judge Greenaway said that driving under influence, but reckless endangerment, is there any question but that there was, you know, that the reckless endangerment was satisfied here? Well, I think Mr. Sutton, the person on the hood of the vehicle, put himself in danger. It wasn't Mr. Harvard that placed him in danger. But that's not what the crime says. It says he commits it if he recklessly engages in conduct, which places or may place another person in danger of death or serious bodily injury. Well, I would argue that he did not engage in reckless conduct. So the recklessness, the state of mind would have to be determined by the jury? Is that the idea? Yes, Your Honor, exactly. Mr. Harvard made several attempts to get Mr. Sutton off the hood of his vehicle. And mind you, the whole time he is on the phone with 911, trying to figure out what to do. This is an odd set of facts. There's no playbook for Mr. Harvard as to what he should do. So he called 911. He was in fear of his life. And he did what 911 told him to do. He got off at the proper exit. And he took Mr. Sutton to the police. Is it disputed as to whether Cesnales knew about the 911 call? He did know about the 911 call. He did testify that he was aware of the 911 call. Not only aware of the 911 call, but aware that Mr. Harvard was in fear for his safety as well. I agree with the court's suggestion that this probable cause inquiry should be one for the jury. That is especially true when there are credibility conflicts. That is under Merkle, a case from this court. We do have credibility conflicts here. We have Mr. Sutton's statement as to what happened, which Trooper Cesnales testified to that his statement didn't really make any sense. Nevertheless, he took Mr. Sutton's statement over the word of Mr. Harvard's, as well as his corroborating witness, Anna Mazzetti. It's a pure conflict in credibility right there. And in that situation, the question should go to a jury. But the law says that a police officer making an arrest doesn't have to evaluate credibility. Doesn't have to make a credibility determination as a general matter. So how do you square this particular case with that proposition? I agree. I agree. But he is still not free to ignore the evidence in front of him. And is that is one of the reasons because he himself testified that, I'm talking about Trooper Cesnales, that the account that Sutton provided didn't make sense? Yes, absolutely. He did admit that. And he did have a significant amount of evidence to show that Mr. Sutton was the aggressor in this matter and not Mr. Harvard. He also testified that it would be unusual for someone to call the police and look for the police's help if they were the one committing the crime. And that's the situation we have here. He ignored both Mr. Harvard and Ms. Mazzetti's statement that Mr. Sutton jumped on the hood of the car. That Mr. Harvard slowed down to let Mr. Sutton off. That Mr. Sutton initiated the attack. That he threatened and presented weapons such as a cinder block, a long knife. And Mr. Harvard wasn't exactly sure if Mr. Sutton had a firearm. And like I mentioned earlier, Harvard was also below the legal limit. If I could turn your attention to, this was a warrantless arrest. At some point, there is an affidavit of probable cause. Now, there are cases where we go through the exercise of reconstructing an affidavit. And that's usually in a circumstance where there's a challenge to the application for the original arrest warrant or search warrant. Is there a need to go through that exercise of a reconstruction here? For a warrantless arrest, I don't believe it is necessary. However, that does not get Trupan Sesnales off the hook. And I would point the court to Manuel v. City of Gillette, a Supreme Court case from 2017 where the Supreme Court held that individuals claiming a pretrial deprivation of liberty may invoke the Fourth Amendment when that deprivation occurs after the legal process commences. So in this situation, the legal process effectively commenced when Trupan Sesnales arrested Mr. Harvard pursuant to that warrantless arrest. However, the conduct of Trupan Sesnales, such as making the accusation that he was smoking crack cocaine in his vehicle, not including the information provided by Mr. Harvard and Ms. Mazzetti in the affidavit of probable cause, was still information that could be used in the criminal process. And he did not give the full story there. So although the affidavit of probable cause is relevant, it is not necessary to reconstruct it for the warrantless arrest purposes. Thank you. Let's go to the next step, which is let's assume the probable cause affidavit is relevant. And the reconstruction question that Judge Schwartz just put to you, do we have to go through the Dempsey exercise with regard to each of the crimes charged? I don't believe so, because the probable cause standard is so much lower than what has to be proved to convict somebody of a crime. You just have to prove that somebody, that there was probable cause that a crime was committed. You're not required to go through each of those elements for the crime. And that is why appellant didn't do that here. Appellant didn't do that here because appellant believes that there is no probable cause to arrest him for any crime. So I do not believe that that is a requirement here. I would like to move to the equal protection issue, if I may. The lower court here. How is Sutton a comparator? There was not a lot of analysis by the district court, but it did not seem incorrect in the notion that they're not appropriately deemed to be comparators. I think what the lower court was requiring at this stage was wrong. It narrowed the standard that this court has recognized, which is similarly situated. The lower court essentially made that standard identically situated. The lower court even pointed to that a proper comparator for Mr. Harvard would be a Caucasian driver who drove at highway speed with someone on the hood of the vehicle, but was not charged with crime. That is essentially an identical comparator, which is a very narrow standard and would basically diminish a plaintiff's ability to bring an equal protection case. But I thought that the district court said that it was the now appellant who had chosen Sutton as the comparator. That is true. The appellant did choose Sutton as a comparator, and that is because Mr. Sutton and Mr. Harvard both faced Trooper Sesnalis as suspects in a confrontation. One white, one black, and the treatment of the two individuals by Trooper Sesnalis was clearly discriminatory. And you can point to the language used by Trooper Sesnalis on the scene calling my client boy repeatedly. And then also to prove that discriminatory motive, look at the accusation that my client was smoking crack cocaine in his vehicle without any evidence whatsoever. So the fact that they both faced Trooper Sesnalis, I believe is enough to make them What can you rely on for that proposition? Well, I do not have a case exactly on point. You know, this is an odd set of facts, but I believe under the similarly situated standard that Mr. Harvard and Mr. Sutton fit under that standard, they don't, they have to be alike in all relevant aspects. And all relevant aspects here would be the two individuals involved in a confrontation, both facing the defendant in a determination as to who committed the crime. And Trooper Sesnalis unequally applied the law here. He focused his investigation solely on the black individual, and the white aggressor walks free. He calls the white aggressor the victim also. He does. He does. Could a jury decide whether this sufficient similar situation here? I believe so. I believe the jury should decide all of these issues. For the equal protection claim, Mr. Harvard meets all of these elements. He was treated differently, obviously charged with crimes while he was the victim of the crime. Mr. Sutton walked free. I was talking earlier about the discriminatory motive or purpose of the differential treatment. And that is proven by the language used on the scene, as well as the egregious accusation that my client was smoking crack cocaine, both that I think show a racial bias against my client. Moving to the reckless investigation issue, this is an issue that has been, this is a claim that has been recognized by the lower court, but not has, but has not been recognized by this court. And so doesn't that sort of grant them qualified immunity and affirm the district court's view of that particular subject since it's not been clearly established by this court? Well, the claim has been established prior. It has been called into question later. I believe qualified immunity, the purpose of qualified immunity is to put an officer on notice as to whether his conduct could be constitutionally deficient. And these claims have been recognized in the past. Clearly, I thought you had a more basic problem that it was, you argued 14th amendment and under our case law, it needs to be fourth amendment. So doesn't that preclude you going any further on this claim before we even get to qualified immunity? No, your honor, I argue that for the reckless investigation should fall under the 14th amendment. There is not a probable cause requirement for reckless investigation, although recklessness could go into the probable cause inquiry. Well, how do you get around our case? Janice versus Cox, which says with regard to reckless investigation, such a claim if cognizable could only arise under the fourth amendment and not the 14th amendment. So this is not exactly clear. In Janice, the court held that there was qualified immunity because at the time that the reckless investigation claim in that case arose, it had not yet been recognized. Since then, it has been recognized as a claim. It's just not, it's just unclear as to whether that falls under the 14th amendment or the fourth amendment. Regardless, I believe that it has been established enough to put police officers on notice that they cannot engage in a reckless investigation. What case can you identify that's a circuit level or Supreme Court level case that was decided at the time of this event that would have put these officers on notice that a cause of action for reckless endangerment exists? I'm sorry, reckless investigation existed. I cannot point to a third circuit case or a circuit case or a Supreme Court case that states that. Yes, I see that my time is up. Would you like me to continue? I'm not sure we're going to go with that offer, but let me ask Judge Rendell whether you have anything else. No, I have nothing further. And Judge Schwartz? No, thank you. Well, then we're not going to take you up on your kind offer, counsel. But we will get you back on rebuttal. Now, let's hear from Appellee's counsel, please. Thank you, Your Honor. May it please the court, Michael Scarrinci from the Pennsylvania Office of Attorney General on behalf of Trooper Cisnallis and Vidi. Your Honor, this was, as the district court recognized, a bizarre incident, or as Trooper Cisnallis said, it was an incident where little made sense. But Trooper Cisnallis did have several undisputed facts that Mr. Harvard was driving his vehicle for 10 miles along the highway. Let me ask you this question. There is, in the affidavit as I've reviewed it, there's no mention of Harvard and Mazzetti telling the trooper that Sutton was threatening them with a knife. There's no mention that he threatened them with cinderblock at Mazzetti's home. There's no mention that Sutton did not have any injuries consistent with having been hit by a car. There's no mention that Sutton's story was incredible on its face, which was confirmed by the deposition. There's no mention that Mazzetti and Harvard said that Harvard slowed down to give Sutton a chance to get off, but he refused. And there's also no mention that Cisnallis stated that he believed the source of the information because of defendants' reputation for criminal activity, referring to Harvard, of course, and there's no evidence of any criminal activity. And to the extent that that may have been related to the trooper by Sutton, the trooper already said that he's had a history with Sutton and did not think he had a reputation, he didn't use these words, but essentially he didn't have a reputation for being truthful. With all of that out of the affidavit, don't we have a real problem here because of the plainly exculpatory evidence not being in the affidavit? No, Your Honor, there's no problem because the affidavit of probable cause, that was what was submitted to the court when the criminal charges were filed. By that time, Mr. Harvard had already been arrested and my adversary has been relying on Wilson v. Russo, which is a case that has to do with an application for a warrant. And when there's an application for a warrant, then the officer's required to put both inculpatory and exculpatory evidence. That's a Franks v. Delaware situation where there's been material omissions. Well, isn't there a more basic problem here, though? Judge Conte said that no reasonable jury could find a lack of probable cause, but haven't we said, and specifically in Dempsey, and based on that, she granted summary judgment, haven't we said in Dempsey, if a reasonable jury could find a lack of probable cause, looking at the totality of the circumstances in the light most favorable to Harvard, summary judgment is not permissible. How do you get around that? Here, looking at the totality of circumstances in the light most favorable to Harvard, a reasonable jury could say there was no probable cause here. Don't we have to send this back and throw out the summary judgment and let it go to trial and let the jury decide probable cause? No, Your Honor, because there are three undisputed facts here that have nothing to do with not just reasonably trustworthy, but undisputed, that Mr. Harvard drove at a high rate of speed, somewhere between 60 and 100 miles an hour on the highway for 10 miles with a man hanging from the hood of his car. And he was talking to the 911 operator who told him to do that, and he tried to get Sutton off the hood and Sutton wouldn't go. What's a man to do? The guy's pulling the windshield wipers off the wiper. He's got a bulge in his waistband. If I'm a reasonable juror, I might find that there was absolutely no way that you could arrest this guy for anything, or at least call Sutton a victim. It's ridiculous. I think these disputes about the knife and tearing things off the car, they go to an affirmative defense of self-defense, not to the prima facie elements of a crime of recklessness. Counsel, though, I think what Judge Rendell was pointing out, frankly, has to do with mens rea. And the conduct that you discuss as being without dispute is the actus reas. We're talking about mens rea. And in this case, I'd like to hear your best explanation as to why we should not have a jury decide whether mens rea existed in light of all the facts viewed in Mr. Harvard's favor. Well, this court has said in cases like Davis v. Malitsky that no matter how compelling the exculpatory defense, that could not defeat already present probable cause. Again, Your Honors, I think this goes more to an affirmative defense of self-defense, which this court has never required that an officer consider as part of a probable cause determination. Can we go back to one fact that Judge Rendell brought up? And that is, he's following the direction of the 9-1-1 operator. He was in the driveway, tried to get out of the driveway, Sutton jumps on top. If the 9-1-1 operator at that time said, sit tight, I've dispatched an officer there, and then Harvard did what he did, I could understand your argument. But Harvard did exactly what the 9-1-1 operator told him to do. Does that play no role in determining probable cause? I don't think the 9-1-1 operator told him to get on the highway. That's not my recollection of the record here. The 9-1-1 operator knew exactly where he was. The 9-1-1 operator led him to a police blockade. I mean, the police were waiting for him, right? Because the 9-1-1 operator guided him there. I think he was already on highway at that point, Your Honor. But let me address one other thing. I think for the DWI, there is no defense to that. A self-defense defense is not going to negate the probable cause here. I mean, there's one thing to say he's sweating, his eyes are darting. But if you need to look at it in the light most favorable to Harvard, namely that the reason that he's sweating and his eyes are darting is because he's just been through a horrific experience, that's going to be for the jury to decide. That's not going to be for the judge. I mean, I don't think Judge Coddy looked at these facts in the light most favorable to Harvard in saying that no reasonable jury could find probable cause lacking. I understand, Your Honor. But that's not just what Trooper Cisnallis relied on. He also relied on his fellow officer, who's a drug recognition evaluator, to make a- That was later. That was after the fact. Well, also, who he gave him correct information to. Well, Your Honor, can I? I'm sorry. Can I correct? Well, one second. I mean, if you're talking about the officer who's the drug expert, he's the one Trooper Cisnallis told him that he'd been smoking crack. And the only way he could have gotten that was from Sutton, who he had a history with and knew him not to be credible based on everything that he heard that day. So I don't know where we're going with that. Again, as Judge Rendell pointed out, you have to look at the totality of circumstances. It wasn't just the sweaty and the nervousness, but it was also you had been drinking, and that justified asking Trooper Beatty to make a drug recognition evaluation. And under cases like Devenpeck and Barna and Wright versus City of Philadelphia, there only has to be probable cause for any charge that could have been charged. And the fact he was arrested at that time or taken for a drug recognition evaluation is enough to give probable cause. That's the drug recognition is considered reliable evidence in all 50 states. And certainly Trooper Cisnallis could rely on a determination made by his fellow officer to justify the arrest. Yeah, but part of the predicate for that determination was a statement from a person who Mr. Trooper Cisnallis acknowledged is not a reliable source. So shouldn't a jury decide whether there was probable cause even for the DUI? Again, no, no, Your Honor, because it's undisputed that he did, was drinking alcohol, and that justifies the drug recognition evaluation there, because part of drug recognition evaluation is to look at alcohol use as well. No, no, no. Look, how can you separate that out? You're asking us to do something pretty incredible, right? You're asking us to allow Trooper Cisnallis to take unverified information from an unreliable source and influence an expert's determination. And the expert admits that the crack cocaine was the determinative factor in the conclusion that he reached, because the only information he had about alcohol consumption was that the person was below the legal limit. If you take that then with, he was smoking crack cocaine while driving. I mean, what drug expert is not going to do that? Is not going to conclude that that's problematic. The point that I think we're all alluding to is when those two facts are added together, you have to say to yourself, yeah, this is interesting, but a jury should be determining whether there's probable cause because it's infected with what Trooper Cisnallis has admitted was incredible testimony. Daniel, I think you have to look at both the favorable and unfavorable facts. That's how probable cause determination is made. And then see if any reasonable jury could find that probable cause is lacking. And I think with the admission that he had been drinking, that he had been driving in a reckless way. Uh, uh, you're saying that no, you're saying that no reasonable jury could find an absence of probable cause looking at the facts in the light most favorable to Harvard. Is that your contention? That's my contention, Your Honor, because the standard requires this court to consider both favorable and unfavorable facts. And on their face driving at a high rate of speed with a man hanging from the car is reckless conduct. Just as the district court said, it's the very definition of reckless conduct. Well, that's for the probable cause determination itself, but for the purposes of whether a district court can grant summary judgment, there has to be a conclusion that no reasonable jury viewing the facts in all of the facts, but in the light most favorable to Harvard could find that probable cause was lacking. And you, I think you can tell from our questions that, that we're, there's a lot of facts going on, but looking at them in the light most favorable to Harvard, um, it's a tough case. If I could ask you about the Equal Protection Claim for a moment. Two questions. One is, in the circumstances that were presented at the scene, Trooper Cisnallis had information that Sutton was an aggressor, that he threatened Mr. Harvard, yet he was not arrested. Only Harvard was arrested. If we look at that scenario in that way, at a minimum, we have two people both accused of, of having aggressive behavior taken towards them, but only one is arrested and the other is not. Why are they not at least similarly situated to state a claim for a violation of the protection clause? Your Honor, it's because this court requires a high degree of similarity when it addresses the similarly situated prong of, of Equal Protection Claim. So for example, in a case like Crane versus Cumberland County, cited in my brief, and also Davis v. Molitsky, you had an African-American plaintiff who wielded a knife and he alleged that the other persons involved in the scuffle should have also been charged. And this court has said that those people weren't,  Or if I think you've taken, you know, the similarly situated test is used in a lot of different contexts. If you take an unlawful discrimination claim in employment, you'll see plaintiffs talk about persons in different departments with different responsibilities. And this court has said, those kinds of people aren't similarly situated to you. This has to be a high degree of similarity. But let's, I understand what the district court was saying is at the level of only one guy was on a hood and the other guy wasn't, they're not similarly situated. But if you look at it from this perspective, each of them were alleged, the other was involved in violent behavior. One, Mr. Harvard alleges that Mr. Sutton came at him with a knife. Sorry, he believed, yes, had a knife, attempted to throw a cinder block at him, thought he had a gun. Those were his dangerous weapons. And as it relates to Sutton, Sutton's view is I got hit by a car, A, a dangerous weapon. So can't a frame be drafted here to show that they are in fact, two similarly situated people, each claiming the other took a dangerous weapon towards them in a threatening way. And how do you say they're not similarly situated if you use that frame, as opposed to the frame the district court used, which was one guy's on a hood, the other guy isn't. I understand, Your Honor. I mean, of course, the broader you make it, the easier it is to make them similarly situated. And I think that's my friend on the other side's point. He points to things like, they both faced troopers to tell their side of the story. But again, I think the case law is, requires a higher degree of similarity than just they're both telling their stories to the police officer and he arrests one and not the other. And I think the reason he made the arrest is because he had certain undisputed facts like driving on a hood, driving on high rate of speed. Not as opposed to- So is it your position that's a legal call, not a call for the jury? I think Judge Rendell had asked your adversary about who should make the call concerning what's similarly situated. Is that a legal conclusion from your point of view? I think it's typically a legal conclusion. I think it can maybe go to the jury on occasion. Again, we're looking at a discriminatory effect and discriminatory intent on equal protection claim. And I think you have to get past a certain threshold before it goes to the jury. And I don't think- Well, you have to say- If you're looking at that, let's look at the facts, right? You have a situation where Mr. Harvard says that Sutton has called him the N-word throughout their encounter. Sutton has threatened his life throughout their encounter. Sutton says, he ran me over, right? Unless he's Superman, someone's run over, they're not gonna then go into the house, try to get a knife to come after you. So everything that Sutton has said, Trooper Cisnallis has admitted was incredible. I mean, what law do you want us to create here with regard to an equal protection clause? Is it that we have to find another black man who's attacked by another white man in a small Pennsylvania town? Is that what we have to do? Because the other cases that you talked about were situational, right? You have people in a particular set of circumstances and you're comparing them. This is the same kind of case. We have people in a particular situation and we're looking at whether or not there's disparate treatment. I'm wondering, I understand why you're pushing back on this, but I think you'd have to admit that based on the cases that you've cited and the way that Judge Schwartz has posed it most recently, this is a comparator. Well, I think there are... I'm sorry. Go ahead, go ahead. I'm sorry. I think there are similarities, of course, Your Honor. But I think this is a kind of a novel case and that's unfortunate for Mr. Harvard. But under this court's case law, there has to be a high degree of similarity. If this was, for example, a legal drag race, a street race, and you had one white driver, one black driver, I think that's an easy comparison. But when you have a case like this, where things are a novel, it's going to be hard to make a case that similarly situated people were treated differently, especially when the facts are different as to each person. But maybe the case could be made that this level of similarity needs to flex somewhat when there's no other rational explanation for treatment, calling people names in the affidavit of probable cause. Why in the world would Sutton... Or would De Cisnallis say that Sutton was the victim? Why in the world would you do that? It doesn't make any sense at all unless there is unequal treatment for a reason and a prohibited reason at that. Seems to me there might be some room in the law for a little bit of flex on the similarity when the facts clearly make up... You focus on the equal part. What other constitutional remedy is there for this type of behavior? Your Honor, I think the difference here is that Trooper Cisnallis relied on the undisputed facts. That was his testimony at page 427. The undisputed facts of a man driving with a person on the hood. He didn't have undisputed facts as to Mr. Sutton. There was... Did he know about the 911 call? Did he know about the 911 call? I'm sorry, I want to get your view on that. Yes, he knew about the 911 call. He responded because of it. Your Honor, if I could just go back to my last point for one second here. I think Mr. Trooper Cisnallis just found that he didn't have a lot of cooperation from the witnesses. That was a testimony that, for example, when he spoke to Ms. Mazzetti and he was trying to find out why Mr. Harvard had given her a ride home, she said, I can get in the car, any car who I want. And he said, I didn't find her cooperative either, implying he was having some trouble getting cooperation. So he relied on the facts that were undisputed. And that's, I think, the difference here. That's why he treated, that's why he charged Mr. Harvard right away and didn't charge Mr. Sutton, because those facts were undisputed. He had different versions from different people. There was some suggestion of a lover's spat. And I think that's the reason that they were treated different, not because of Mr. Harvard's race. Is that why Cisnallis called him boy? Because there's no issue? I just want, before, I want to respond to that, of course. That kind of word has no place in law enforcement. And all suspects are entitled to be treated with respect. And I know Trooper Cisnallis denies making it. And Ms. Mazzetti, who was certainly sympathetic to Mr. Harvard, didn't hear it. And it wouldn't be relevant to a Fourth Amendment claim because we're concerned with objective facts, not subjective. I acknowledge it would be relevant to a 14th Amendment claim. But I just want to put that out there. I'm certainly sympathetic to Mr. Harvard. I think he was placed in a very stressful situation and made a quick decision. I think it was maybe a poor decision to drive on the highway, but it doesn't negate the probable cause that existed under this Court's precedent. Thank you, Your Honor. Judge Rendell? I have nothing further. Judge Schwartz?  All right, counsel, thank you very much. We'll turn to rebuttal, sir. Apologize, I had to unmute myself. My opponent mentioned that this is a novel case. Just because this is a novel case doesn't mean that Mr. Harvard's rights go out the window. It doesn't mean that Trooper Cisnallis is afforded a better leeway than he would be in a normal case.  but I think it's important to understand when you break it down, we have a black victim who was unlawfully arrested and prosecuted by a racially biased police officer and the white victim walked free. I'm sorry, not the white victim, the white perpetrator walked free. I respectfully request that this honorable court reverse the lower court's decision to grant summary judgment. Thank you for your time. Thank you. Thank you. Any other questions, Judge Rendell or Judge Schwartz? Thank you. Okay, thank you very much, counsel. We appreciate your arguments and we'll take the matter under advisement and we wish you and your family the best in this time of national crisis. Have a good day.